Filed 6/21/13 Universal Psychiatric Med. Center v. WCAB CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| UNIVERSAL PSYCHIATRIC MEDICAL CENTER, INC., <br><br> Petitioner, <br><br> v. <br><br> WORKERS' COMPENSATION APPEALS BOARD et al., <br><br> Respondents. | B242370 <br><br> (W.C.A.B. No. ADJ3099625) |

PROCEEDING to review a decision of the Workers' Compensation Appeals Board. Annulled and remanded with directions.

Dawn M. Coulson and Michael B. Wilson for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Heggeness, Sweet, Simington & Patrico and Clifford D. Sweet III for Respondents Insurance Company of the West, Explorer Insurance Company, and The Travelers Companies, Inc.

Goldman, Magdalin & Krikes and Eleen Y. Vallejo for Respondent American All Risk Loss Administrators.

Fabiano, Castro, Siefkes & Clem and Denise Lloyd Clem for Respondents California Insurance Guarantee Association, Safeco Insurance, and Cintas Corporation.

———————————

Champion Medical Group, a California Corporation doing business as Universal Psychiatric Medical Center, Inc. (Universal), was one of many lien claimants represented by Premier Medical Management Systems, Inc. (Premier). Universal assigned some of its liens to Premier for purposes of collection. As part of a plea bargain that resolved criminal charges against two of Premier's executives, Premier dismissed the lien claims of 109 entities, Universal's included. The workers' compensation administrative law judge (WCJ) upheld the dismissal of Universal's claim over its objections and the Workers' Compensation Appeals Board (WCAB) denied Universal's petition for reconsideration without issuing an opinion of its own.

The fundamental flaw in the WCJ's reasoning is that the WCJ analyzed and addressed issues that were common to most of the lien claimants, whom the parties have chosen to designate collectively as the Premier Providers, and that the WCJ ignored the facts that were unique to Universal's case. That is, the WCJ validated the resolution of the global case involving over 100 Premier Providers but failed to address Universal's case. As it turns out, there is evidence that Universal did not authorize Premier to dismiss its liens. Concomitantly, the entire body of evidence on which the WCJ relied to find that Universal did authorize Premier to dismiss its liens is irrelevant to Universal, however relevant it may be to the Premier Providers. In fact, there is evidence that Universal cannot be included in the class of Premier Providers.

If the evidence is irrelevant, and is hence inadmissible,[1] the decision of the WCAB cannot be, and is not, supported by substantial evidence. Therefore, we annul the WCAB's decision and remand with directions to vacate the dismissal of Universal's liens. (Lab. Code, § 5952, subd. (d).)[2]

---

[1] "No evidence is admissible except relevant evidence." (Ev. Code, § 350.)

[2] "The review by the court shall not be extended further than to determine, based upon the entire record which shall be certified by the appeals board, whether:… (d) The order, decision, or award was not supported by substantial evidence." (Lab. Code, § 5952, subd. (d).)

## PROCEDURAL HISTORY

*1.*     *The Civil Actions Against Premier and the Role of the Law Firm of Riley & Reiner*

In 2002, the California Insurance Guarantee Corporation Association initiated a proceeding against Premier in which it alleged that Premier engaged in billing fraud, fee splitting and the unauthorized practice of medicine.  A number of other like actions were filed which were consolidated in 2004, with *Idahirma Yero et al. v. Elite Personnel, California Insurance Guarantee Association et al.* as the lead case.  Premier retained the law firm of Riley & Reiner to represent it, as well as the Premier Providers.

In 2006, the WCJ ordered the law firm of Riley & Reiner to indicate in writing which of the lien claimants it represented.[3]  Riley & Reiner  filed three documents in July and October 2006 that seem to be repetitive.  The third document, a letter dated October 17, 2006, listing multiple lien claimants, identifies 109 of them as represented by Riley & Reiner.  Universal, more correctly Champion Medical Group, is listed in this letter as one of the lien claimants represented by Riley & Reiner.

On March 14, 2008, the WCJ ruled that the letter of October 17, 2006 reflected which lien claimants were represented by Riley & Reiner.  The court ruled that this letter was accurate and required no supporting documentation.  This letter was to play an important role in the ensuing proceedings.

Universal claims that it was not informed about any of the foregoing proceedings and was also uninformed of the WCJ's identification of the entities who were represented by Riley & Reiner.

*2.*     *The Criminal Charges, the Plea Bargain and the Stipulated Dismissals*

At some point, two of Premier's executives, David Wayne Fish (Fish) and Birger Greg Bacino (Bacino), as well as Premier itself, were criminally charged with filing false and fraudulent claims, filing false tax returns and unlawfully receiving compensation for

---

**3**     According to the WCJ's written opinion issued on February 10, 2011, which denied the requests to vacate the dismissals, Riley & Reiner were ordered to communicate with the lien claimants in writing in order to determine whether they were represented by this law firm.   The record is not clear whether Riley & Reiner did this.

the referral of clients. Fish and Bacino entered into a plea bargain in 2010 under which they agreed to dismiss with prejudice lien claims filed by the Premier Providers that were listed in the October 17, 2006 letter generated by Riley & Reiner.

On or about September 24, 2009, a STIPULATION AND ORDER FOR DISALLOWANCE AND DISMISSAL WITH PREJUDICE OF REQUESTS FOR THE ALLOWANCE OF LIENS (hereafter Stipulation) was filed by Fish and Bacino, acting on behalf of Premier and the Premier Providers. The Stipulation provided that Premier and the Premier Providers undertook to dismiss with prejudice liens filed between August 28, 1998 and October 15, 2004. The Stipulation used the letter of October 17, 2006 filed by Riley & Reiner to identify the lien claims that were being dismissed. As noted, Champion Medical Group doing business as Universal was one of the 109 Premier Providers identified in the October 17, 2006 letter.

Also on September 24, 2009, the WCJ entered an order dismissing the liens of the listed Premier Providers.

3.      *Universal's Efforts to be Excluded from the Dismissals; Universal's Evidence*

On October 14, 2009, Universal filed a petition for reconsideration from the order dismissing the liens.[4] The petition contended that Universal was not a Premier Provider; that Universal only hired Premier to perform billing and collection services; that the petition was brought on behalf of Universal by Innovative Medical Management (Innovative) who was representing Universal in the lien claims that were dismissed on September 24, 2009; that it was a violation of due process to dismiss the liens without a hearing; and that the WCJ acted in excess of his jurisdiction.

On October 21, 2009, the WCJ set aside the dismissal order as to 26 lien claimants, leaving the September 24, 2009 order in effect as to the balance of the 83 remaining claimants, which at that time included Universal.

---

[4] One of respondents' contentions is that Universal failed to take action to protect the liens held for collection by Premier. Universal's quick response to the dismissal of its liens refutes this contention.

4

On November 4, 2009, the WCJ granted Universal's petition for reconsideration and vacated the dismissal order as to Universal's liens and those of another lien claimant and set for a hearing the issue whether the dismissal order was valid. On December 3, 2009, the WCJ vacated the dismissal as to another claimant and reaffirmed the previous order vacating the dismissal of Universal's liens.

On or about February 11, 2010, Insurance Company of the West, Explorer Insurance Company and The Travelers Companies, Inc. filed a motion to be heard by the WCJ who had dismissed the liens. The motion contended that Champion Medical Group doing business as Universal was represented, and had been represented, solely by Riley & Reiner and that assertions to the contrary were false. This motion sought sanctions and we will refer to it as the Sanctions Motion.

On March 24, 2010, the law firm of Epps Yong & Coulson filed a notice that it represented Innovative as well as Champion Medical Group doing business as Universal.

On March 30, 2010, attorney Raymond L. Riley filed a declaration under penalty of perjury in the Sanction Motion proceedings that stated neither Riley & Reiner, nor attorney Riley personally, ever represented Champion Medical Group doing business as Universal. The declaration states that Champion never authorized Premier or Riley & Reiner to "disallow" its liens.

On April 5, 2010, Dr. Stuart Zubrick filed a declaration under penalty of perjury that he is the owner and a director of Champion Medical Group doing business as Universal and that Premier did not have the authority to dismiss Universal's lien claims. The declaration states that Premier had been hired only to handle a portion of Universal's lien claims. Innovative handled the balance. The declaration avers that Dr. Zubrick learned in September 2009 that Premier had disposed of Universal's liens without the knowledge, authority or consent of Universal and that Dr. Zubrick had informed Innovative that Premier was no longer authorized to represent Universal in any way.

According to Dr. Zubrick, "Universal was never a Premier Provider," as Universal was at all times an independent medical provider who only hired Premier to perform billing and collection services. The declaration also states that at no time did Universal

5

retain or hire Riley & Reiner to act as its counsel.  Finally, the declaration states that nothing in Universal's agreement with Premier gave Premier the authority to dispose of Universal's liens.

Apparently, the Sanctions Motion was heard on April 30, 2010.  On May 6, 2010, Dr. Zubrick filed a declaration stating that ". . . in order to make the record clear and in response to the Court's direction," and without admitting that Riley & Reiner ever represented Universal, Champion Medical Group doing business as Universal was serving notice that it was dismissing Riley & Reiner.  While the record does not reflect how the WCJ ruled on the Sanctions Motion, in light of the tenor of Dr. Zubrick's declaration of May 6, 2010, it is reasonable to assume that it was denied.

The WCJ set the matter of the dismissal of the liens, which included Universal's, for a hearing, which took place on December 8, 2010.[5]  Universal appeared, represented by its current counsel, Epps, Yong and Coulson.  The WCJ received evidence in the form of declarations, letters and documents , including another declaration by Dr. Zubrick, which is discussed below.  No witnesses were called to testify.

Dr. Zubrick filed another declaration on December 1, 2010 which was similar to his prior declaration of April 5, 2010, with the difference that the Universal-Premier physician agreement was attached to this declaration.  This declaration states that Premier was never given the authority to retain counsel on Universal's behalf, or to waive and dispose of Universal's lien claims.  The declaration also avers that the agreement reflected in the Stipulation was made without the knowledge, authority or consent of Universal.

The WCJ issued his opinion denying the requests to have the dismissals vacated on February 10, 2011.  This opinion is discussed in the next section.

---

[5]     All of the lien claimants who had filed petitions for reconsideration of the dismissal order of September 24, 2009 were included in this hearing.

**RULINGS BY THE WCJ AND WCAB**

The WCJ's opinion, 32 pages long, addresses, among other issues, the question whether Premier, i.e., Fish and Bacino, had the authority to dismiss liens of the Premier Providers. The opinion defines Premier Providers as the parties "named in the Premier consolidation," which means the lien claimants listed in the October 17, 2006 letter of Riley & Reiner. The opinion refers only to the Premier and the Premier Providers and never mentions Universal by name.

At the outset there is a substantial question whether any of the WCJ's opinion applies to Universal. To begin with, Universal contended and still contends that it was not a Premier Provider. It supported this contention with Dr. Zubrick's declaration, which in turn draws support from attorney Riley's declaration that neither his firm nor he personally ever represented Universal. There is simply nothing in the record that refutes Riley's unequivocal statement that he never represented Universal. If in fact Universal was never a Premier Provider, the WCJ's opinion simply does not apply to Universal.

The wider background to this is that it appears that Premier acted for a great number of lien claimants as a business agent. But what was true of lien claimants who were also Premier Providers was not necessarily true of Universal. The evidence is that Universal, while assigning a number of liens to Premier for collection, never engaged Premier as a business agent as the Premier Providers did.

The balance of the WCJ's opinion confirms that the WCJ addressed Premier's relationship to the Premier Providers, but failed to address Premier's authority, or lack of authority, over Universal's liens.

The WCJ gave 10 reasons why Premier had the power to dismiss liens of the Premier Providers with prejudice. As it turns out, none of these reasons apply to Universal. The WCJ's findings are set forth in italics.

1. *The provisions of the agreement between Premier and the Premier Providers dealing with collection gave Premier the requisite authority to dismiss the liens.* As we explain in the next section, the collection agreement between Universal and Premier did not, as a matter of law, give Premier the power to dismiss Universal's liens.

7

2. *The Premier-Premier Provider agreements, taken as a whole, gave Premier the right to dismiss Premier Provider liens.* But this was not true of Universal; Dr. Zubrick declared under penalty of perjury that the only services Premier rendered Universal were billing and collection on a portion of its liens. Innovative handled the rest. In fact, Dr. Zubrick specifically stated that Universal was not a Premier Provider, but rather an independent medical provider, an assertion that is consistent with the circumstance that it used two agents to collect on its liens.

3. *Riley & Reiner represented that they served as counsel for the Premier Providers.* But attorney Riley declared under penalty of perjury that neither he or his form ever represented Universal.

4. *Riley & Reiner represented the Premier Providers for five years without any Premier Provider claiming to the contrary.* Since, in fact, Riley & Reiner did not represent Universal, there was hardly a need for Universal to protest that they were not represented by Riley & Reiner.

5. *In 2004 and 2005, Riley & Reiner stipulated to the dismissal of a number of liens involving Zenith Insurance Company.* Since it was not shown that any of these liens were Universal's, this is immaterial.

6. *Some of the liens were asserted in Premier's name, which suggests that Premier had broad powers over these liens.* Since it was not shown that any of Universal's liens were such liens, this is immaterial.

7. *The Stipulation averred that Fish and Bacino had the authority to dismiss liens of the Premier Providers.* We address this point in the next section.

8. *The fact that Premier, in some cases, was to receive 50 percent of the collected lien supports the conclusion that Premier could dismiss the liens.* We do not think that, as a matter of law, a 50 percent recovery means that Premier had enough control over the lien to dismiss it.

9. *The agreements between Premier and the Premier Providers did not require Premier to obtain consent before dismissing a lien.* This is discussed in the next section.

*10. Premier Providers had failed to show that Premier's authority over the liens of the Premier Providers was ever challenged.* Once Universal became aware that its liens had been dismissed, it energetically challenged Premier's right to dismiss its liens.

As noted, the WCAB adopted the WCJ's findings and conclusions and denied reconsideration without issuing an opinion of its own.

While it is clear that the WCJ opinion applies to Premier and the Premier Providers, it is equally clear that it does not apply to Universal.

## UNIVERSAL'S CASE

Universal's case is composed of two separate bodies of evidence: 1) There is the agreement between Universal and Premier, and 2) There are the declarations of Dr. Zubrick and attorney Riley.

*1.      The Agreement*

The agreement between Premier and Universal that is attached to Dr. Zubrick's second declaration has three paragraphs under the "Billing and Collection" section of the agreement. The first paragraph provides for and references the fee schedule used by Universal. The second paragraph provides that billings are to be made in Universal's name and states that Premier is to provide "billing and collection" services to Universal but that Premier "shall not be required to take any extraordinary action in this regard, including litigation." The third paragraph states that all sums collected by Premier on behalf of Universal are to be deposited in the "Clinic Account." This paragraph goes on to state: "[Premier] is hereby appointed by [Universal] as [Universal's] true and lawful attorney-in-fact with full power to (a) take possession of and endorse in the name of [Universal] for the purposes of deposit in Clinic Account, any notes, checks, money orders, insurance payments, and any other documents received in payment or any part thereof; (b) facilitate normal billing follow-up and provide for all collection procedures."

The foregoing is the totality of the provisions of the agreement that addresses billing and collections. We will refer to the foregoing provisions collectively as the "collections provisions."

9

The agreement's collections provisions do not address the authority to dispose of lien claims. That is, the collections provisions do not deal with the authority to settle, compromise, dismiss or litigate lien claims. In fact, the second paragraph appears to relieve Premier even of the responsibility to litigate lien claims. Indeed, the authority that the collections provisions confer on Premier is quite limited, i.e., Premier was authorized to endorse and deposit payments and engage in "normal billing follow-up." Thus, whatever the collections provisions may be in the Premier Providers-Premier agreements, the collections provisions before us do not, as a matter of law, empower Premier to dismiss Universal's claims.

As noted by the WCJ, it is true that there is nothing in the collections provisions that required Premier to obtain authority to settle or dismiss lien claims. However, the *absence* of such a provision does not mean that Premier had such authority. Deriving authority from the fact that authority is not mentioned in the collections provisions does not follow. It is also true that Premier claimed it had such authority, which means that the burden of proof on this issue was with Premier; it was not up to Universal to prove that Premier had no such authority.[6]

2.      *The Declarations*

While the collections provisions are silent on Premier's authority over Universal's lien claims, Dr. Zubrick's declarations are quite clear and unambiguous on the issue of authority. According to Dr. Zubrick, Premier had no authority to dismiss Universal's lien claims. The only services Premier rendered Universal were billing and collection.

There is the matter of the Riley declaration filed in the Sanctions Motion proceedings. While the Sanctions Motion proceedings were initiated after the order dismissing the liens, they took place months before the final hearing on December 8, 2010. The Sanctions Motion was heard and decided by the same WCJ who dismissed the liens. The WCJ apparently ignored the Riley declaration in deciding that Universal's

---

[6]     "The burden of proof rests upon the party or lien claimant holding the affirmative of the issue." (Lab. Code, § 5705.)

10

liens would not be reinstated.[7]  A declaration under penalty of perjury by a lawyer that he did not, and had not, represented a given client is surely highly probative.  Given that it fully supported Dr. Zubrick's declarations, the Riley declaration is critically important evidence.

Even though Fish and Bacino were not a part of Universal's case, this appears to be the appropriate place to comment on their declarations.

Fish and Bacino represented that they had authority to dismiss the liens of the Premier Providers.  The utility and relevance of these declarations  are  questionable since it cannot be said that Universal was a Premier Provider.  Moreover, even if Universal is to be classed as a Premier Provider, Fish's and Bacino's assertions are flatly contradicted by attorney Riley, who was surely a competent witness on what parties he did, and did not, represent.

### SUBSTANTIAL EVIDENCE

The evidence that allegedly supports the finding that Premier had the authority to dismiss Universal's liens is evidence that pertains to Premier Providers.  However,  there is no substantial evidence that Universal was  a Premier Provider.  But even more importantly, none of the reasons given by the WCJ that Premier had authority to dismiss liens of the Premier Providers apply to Universal.  As an example, while the WCJ concluded that the collections provisions of the agreements between the Premier Providers and Premier gave Premier the authority to dismiss liens, we find that, as a matter of law, the collections provisions of the Universal-Premier agreement do not empower Premier with the right to dismiss Universal's claims.  Other examples are that Premier's services to Universal were limited to billing and collection on a portion of its liens, while Premier appears to have acted as a business manager for the Premier Providers; and Riley & Reiner represented the Premier Providers, and did not represent Universal.

---

**7**  During one of the hearings on the issue of legal representation in 2008, the WCJ, referring to reviewing courts, stated that he did not care if they reversed him and did not care if they upheld him.

11

Thus, the body of evidence on which the WCJ relied to show that Premier had the power to dismiss Universal's liens is, in one word, irrelevant.

It is axiomatic that if there is *no* relevant evidence to support a decision, that decision is not supported by substantial evidence.

On the other hand, there is l evidence that supports the conclusion that Universal did not authorize Premier to dismiss its liens, or that Premier did not have such authority. The declarations by Dr. Zubrick and attorney Riley are factual, clear and unequivocal and there is the Universal-Premier agreement itself which does not give Premier the right to dismiss Universal's liens.

There is nothing in the record that impugns in any way the body of evidence on which Universal relies. The only reference to Universal's case is the WCJ's passing mention that some of the Premier Providers waited until the order of dismissal was entered on September 24, 2009 to object on the ground that Premier did not have authority to dismiss the liens. Premier ceased doing business in October 2004. For the next five years, Universal had very little cause to concern itself with Premier, in that its liens were being handled by Innovative. It is not surprising that it was only when it learned that its liens had been dismissed that Universal acted to reverse that decision, when it did act with dispatch, filing a timely petition for reconsideration.

Since the WCAB's decision is not supported by substantial evidence, it follows that the WCAB's decision must be set aside (Lab. Code, § 5952, subd. (d)) and that it must vacate the order dismissing Universal's liens.

**RESPONDENTS' CONTENTIONS**

Several answers have been filed in response to the petition.

One of the respondents contends that Universal failed to introduce evidence that Premier was without authority to dismiss its lien claim. There are two reasons why this argument is without merit.

First, as noted, it was Premier's burden to prove that it had authority and not Universal's burden to prove the negative. Second, the declarations of Dr. Zubrick squarely controvert the claim that Premier had authority to dismiss Universal's liens.

12

December 8, 2010 was the first and only hearing on Universal's request to be excluded from the order of September 24, 2009.  Universal presented two declarations by Dr. Zubrick at that hearing.  Thus, it is not true, as one of the answers asserts, that Universal "did not offer the testimony of a single witness at trial."

The next assertion is that the Universal-Premier agreement made Premier Universal's attorney-in-fact for " 'all collection procedures.' "  One of the respondents purports to quote to this effect  from the Universal-Premier agreement.  It turns out that the agreement actually states:  "[Premier] is hereby appointed by [Universal] as [Universal's] true and lawful attorney-in-fact with full power to (a) take possession of and endorse in the name of [Universal] for the purposes of deposit in Clinic Account, any notes, checks, money orders, insurance payments, and any other documents received in payment or any part thereof; (b) facilitate normal billing follow-up and provide for all collection procedures."  The quoted provision is far more limited in scope than  making Premier attorney-in-fact "for all collection procedures."  In fact, all this provision empowers Premier to do is to actually collect and deposit the collections.

Respondents also contend that at no time prior to September 24, 2009 did Universal challenge that Premier had the authority to compromise and dismiss its lien(s).  However, it was only on and after September 24, 2009 that the issue of Premier's power to dismiss Universal's lien became relevant.  Thus, Universal's inaction prior to September 24, 2009 is not a material circumstance.

Finally, respondents contend that the WCJ's findings of fact are conclusive and not subject to review in this court.[8]  It is also true, however, that we are empowered to determine whether the  order or decision of the WCAB is supported by substantial evidence.  (Lab. Code, § 5952, subd. (d).)  For the reasons stated, we conclude that the WCAB's decision is not supported  by substantial evidence.

---

[8]      "The findings and conclusions of the appeals board on questions of fact are conclusive and final and are not subject to review.  Such questions of fact shall include ultimate facts and the findings and conclusions of the appeals board. . . ."  (Lab. Code, § 5953.)

## DISPOSITION

The decision of the Workers' Compensation Appeals Board denying Universal's petition for reconsideration is annulled and the case is remanded to the Workers' Compensation Appeals Board with directions to grant the petition for reconsideration and to enter an order vacating the dismissal of Universal's liens and to conduct such further proceedings as are consistent with this opinion.



KITCHING, J.


We concur:



KLEIN, P. J.



CROSKEY, J.